Harrison.
July, 1819.

Pumphrey
*v.*
Eyre.

## PUMPHREY vs. EYRE.

When one in payment of a judgment; paid the amount in bank bills, and the judgment was discharged, and it was afterwards discovered that one of the bills was counterfeit, held that the payee might recover the amount of such counterfeit bill in an action for money had and received against the payer.

### INDEBITATUS ASSUMPSIT—PLEA, NON-ASSUMPSIT.

It appeared (in evidence to the jury) that the plaintiff had obtained a judgment in this court against the defendant, which the parties met at the Clerk's office to settle. The defendant paid the amount of it in bank bills, and the plaintiff signed an entry of satisfaction on the record; one of the bills proved to be a counterfeit; the plaintiff applied to the defendant to receive it back and give good money for it; on his refusing, this suit was brought.

The President instructed the jury, that if the above facts were proven to their satisfaction, they should find a verdict for the plaintiff for the amount of the note with interest. The jury accordingly found for the plaintiff as directed.

WRIGHT for the defendant moved for a new trial, because the Court had erred in instructing the jury that the evidence was sufficient to support this action.

"The plaintiff's right (said Mr. Wright) to recover here, depends upon the solution of this proposition in their favor, viz.—" That the payment of a forged Bank note or bill by A. to B. on a judgment and receipt taken, operates to discharge the debt due by judgment, and gives to B. an action for *money had and received*, on *implied assumpsit* to recover the amount." I am not disposed to question the accuracy of the later decisions contradicting the more ancient ones, that a party who receives counterfeit or forged paper or money, in discharge of a debt, has a right to recover notwithstanding such receipt, on the ground that the payment in the semblance only of the thing contemplated by the parties, is *no payment* in *fact*, but leaves the original contract or transaction between the parties where it stood before the *supposed* payment. The relation between the parties has never been changed—the payment supposed to have been made, was never in fact made. As if A owes B, and meets C, who so near resembles B, that he takes him for B, and pays him the debt; it could not be considered a payment to B. The doctrine here laid down is fully supported in 1 Esp. n. p. 131, 2d Joh. Rep. 455, 5th John. Rep. 68, 3d John. Cases 71,

2d Caines' Rep. 117, 7th Term. Rep. 64—and so considering the original debt as remaining; and the debt as in this case, evidenced by a judgment (Record) of a higher nature than parole, the party must resort to that higher evidence of debt, and bring his action upon it, or issue execution, leaving the receipt to be explained on audita querela; or in case satisfaction be entered of record, applying to the Court where the record remains to have the satisfaction vacated. If a man has a debt evidenced by bond or other specialty, he cannot waive that and resort to parol evidence of his debt—nor can he maintain assumpsit upon such debt; for that action is not sustainable unless there have been an express contract, or where the law will imply a contract from a less evidence than a speciality : 1st Chitty Plead. 88. The having entered a receipt on a bond, or a satisfaction of a judg_ment, does not vary the question, because the receipt or satisfaction may be explained, Torbet vs. Barber, 5th John. Rep. 68 ; 2d Burroughs 1005, 12; 5th Bur. Rep. 2590, 4; 3d Durn. and E. 543. But an action for money had and received will not lie for bank notes, unless money has actually been received for them. Noyes vs. Price, 3d Selvin, 3 Cases 242 ; 11 John. Rep. 464, 7th John. 132—Wills. 400—Floyd vs. Day, 3 Mass. Rep.; 2 Doug. 138. If a party might have right to recover on the money having been received for a note or bill produced ; and proved to have been received from the defendant, yet such presumption must be consistent with, and can in no case weigh against the positive evidence in the cause. The proof here, that the note was paid in part satisfaction of the judgment, negatives any such presumption. Will an action of assumpsit lie in any such case ? If that is conceded, must it not be upon an express contract to take back the forged note (if suspected) provided it proved bad, or upon an implied undertaking that the note paid was good ? And can the action for money had and received to and for the use of the plaintiffs by the defendant, possibly be made out by proof that the defendant paid the plaintiff an $100 note for good which proved to be counterfeit ? Mr. Justice Blackstone, in his Commentaries, 3d vol. 163, says, "this species of implied assumpsit is where one has had and received money belonging to another without any valuable consideration given on the receiver's part ; for the law construes this to be money had and received for the use of the owner only, and implies that the person so receiving promised and undertook to account for it to the true proprietor, &c. This is a very extensive and beneficial remedy, applicable to

HARRISON.
July, 1819.

Pumphrey
v.
Eyre.

almost every case where the defendant has received money, which *æquo et bono*, he ought to refund. It lies for money paid by mistake; or on a consideration which happens to fail; or through imposition, extortion or oppression; or where any undue advantage is taken of the plaintiff's situation." The case at bar is not within this definition—no money has been received by Eyre, either in any of the ways mentioned, or in any other way. In all cases to maintain this action, money must *actually* have been received, or be supposed to have been received by the defendant, to and for the use of the plaintiff. The proof shows that the defendant has not received money from the plaintiff or his intestate, and it does not show that he has received a cent from any body else, which, in equity and good conscience, the plaintiff has a right to the benefit of, so as to enable him to resort to the legal implication, that he undertook and promised to account for it to him. All the money that has in fact or supposition passed here, has been from the defendant to the plaintiff; and I cannot conceive the rule of reasoning, which will lead the mind to the conclusion, that this furnishes evidence of the receipt of money by the defendant from the plaintiff, or from others, to and for his use. It seems clear to me, therefore, that the plaintiff fails to make out a case in evidence. Will it be said, that, if it be conceded that the bill was paid by the defendant, and he obtained a credit, the plaintiff ought to have redress, and might as well have it in an action of this kind as any other? Should it be, I answer, a party may be liable in *one way*, when he cannot legally be made so in another; and it does not obtain in Ohio as law, that if a plaintiff bring *assumpsit* for an assault and battery, he should be allowed to recover, because *he might have* recovered, if he had brought an action of *trespass*."

BEEBE for the plaintiff, in reply, said, "As to the first point, this action for money had and received, was brought to recover $100 and interest, the amount of $100 counterfeit bill paid on a judgment recovered vs. defendant; satisfaction of which judgment was entered of *record* on the payment of said bill. Here, then, the *debt* on which the bill was paid, was evidenced by record, and the evidence of its payment was matter of record. The cases produced by defendant's counsel to shew that payment in counterfeit paper, &c. &c. was no payment in *fact*, so far as I have had an opportunity to examine them, only go to establish this point, to wit, that where the evidence of the payment, &c. of such debt, is of a lower degree than evidence by specialty, that then

in some particular cases, such as by him referred to, the payment in counterfeit money, &c. does not operate as *payment*, nor change the nature of the original debt or claim, and that the party may sue on the original contract, &c.—In all his cases referred to on this point, that I have seen, the plaintiffs were not precluded, by the high nature of the evidence of payment produced against them, to go into the consideration; that is to show in what the payment was made, and that it, in fact, was no payment. But suppose a person should, in such case, bring his action on the original claim (having been paid in counterfeit Bank paper) and the defendant should plead payment and produce the plaintiff's receipt under his hand and seal, for so much money as was the original sum, or in full of that demand, could the plaintiff recover in such action? I think he could not, except he could shew that the receipt was procured by fraud; because as I have before stated that the evidence of the payment would be of such a nature, that in such an action the plaintiff would not be at liberty to enquire into the nature of the consideration that moved him to give such receipt to the defendant, &c. Again—when a release of a debt, &c. is pleaded, it is not necessary, in such plea, to shew any consideration for the release. 2d Chitty's pleadings 440. For a stronger reason than the satisfaction entered of record, as above stated, discharged the debt of record in Pumphrey's favor against Eyre, so that an execution *could not* be taken out on that judgment for the $100. But should there be a possibility of enforcing the payment of the $100 by an action on the judgment, or by way of execution issued thereon, it does not follow that it is the only remedy. 2d Burrow 1005, Moses vs. Macfarlan. The action for money had and received, is the proper remedy where *money* has been *received*, or *supposed*, or *presumed* to have been received, for the use of the plaintiff; 3d Blackstone 162; Douglass 138—it is an equitable action of extensive remedy, and is founded, in some degree, in fiction of law. The case before us strikes me in this light—that the judgment being satisfied, and the bill counterfeit, creates in the eye of the law a deposit of the bill in the hands Eyre for the use of Pumphrey, &c. I think, therefore, there was no misdirection of the Court in this case."

PRESIDENT.—There can be no doubt of the honesty of the plaintiff's demand. A just debt was due to him which he has been induced to discharge, on the belief that he was receiving full value for it. This belief was fallacious; it was induced by the defendant himself. The

2 2

HARRISON.
July, 1819.

Pumphrey
v.
Eyre.

defendant has received the full benefit of a fair and honest payment, and the plaintiff as to one hundred dollars of the debt *nothing.* So much of the debt, in equity and good conscience, remains unpaid; the judgment is satisfied in form, but an obligation remains upon the conscience of the defendant, which is not likely to be of very active virtue, unless quickened by the touch of legal authority.

The payment of a counterfeit note is a mere nullity, and not to be considered in law as any satisfaction of a prior debt. The case of Puckford vs. Maxwell, 7th D. and East, 52, is in point. The defendant having been arrested for £80, on a *testatum capias,* gave to the plaintiff a draft for £45, saying it would be immediately paid; and agreed to meet the plaintiff in a few days afterwards to settle the remainder of the debt; on which the plaintiff agreed that the defendant should be discharged out of custody.

The draft was dishonored, the defendant having no effects in the hands of the drawer: whereupon the defendant was again arrested. A rule having been obtained, calling on the plaintiff to shew cause why the defendant should not be discharged out of custody, the Court said, " in cases of this kind, if the bill, which is given in payment, do not turn out to be productive, it is not that which it purports to be and which the party receiving it purports it to be; and therefore he may consider it as a nullity, and act as if no such bill had been given at all." So in this case: if the judgment against Eyre had not been satisfied by the proper entry, the payment of this 100 dollar note might have been treated as a nullity, and execution might have issued for the balance of the judgment. The cases of Owenson vs. Morse, 7 D. and East, 64; Dutton vs. Solomonson, 3 Bos. and Pul. 582, and Stedman vs. Gooch, 1st Esp. Rep. 5, support this doctrine. In Markle vs. Hatfield, 2d Johns. 455, Chief Justice Kent observes, that " it would be a matter of regret, if the law obliged us to regard a payment in counterfeit, instead of genuine bank bills, as a valid payment of a debt, merely because the creditor did not perceive and detect the false bills, at the time of payment. The reasonable doctrine, and one which undoubtedly agrees with the common sense of mankind, is laid down by Paulus in the Digest; and has been incorporated into the French law. He says that, if a creditor receive by mistake, anything in payment, different from what was due, and upon the supposition that it was the thing actually due, as if he receive brass instead of gold, the debtor is not discharged, and the creditor, upon

offering to return that which he received, may demand that which is due by the contract." It will no longer be doubted, I think, but that the plaintiff is legally entitled to recover the amount of his debt remaining unpaid; but can he recover in this form of action? The discharge of the judgment is a sufficient consideration to support this action, 1 Com. Dig. 197—there is, then, a sufficient consideration; a debt due in law and in conscience, and no remedy of an higher nature; it should seem, therefore, that this action is not merely sustainable but that it is the most proper form. This opinion, also, is supported by adjudged cases; I will cite one only, the case of Young vs. Adams, 6th Mass. Rep. 182, in which it was decided that an action of indebatatus assumpsit would lay against a person who, in payment of a note "for 252 dollars, payable in bank bills," had put off a counterfeit bill in part payment, and had taken up his note, for the amount of such counterfeit bill. On the fullest consideration we have been a ble to give the case, we are satisfied that the charge to the jury was not erroneous. *New trial refused.*